IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| MELISSA J. WOODRING | § | PLAINTIFF |
|---|---|---|
| | § | |
| v. | § Civil No. 1:11-cv-00098-HSO-JMR | |
| | § | |
| IRA B. ROBINSON, JR. and | § | |
| REBECCA ROBINSON, individually | § | |
| and d/b/a R.A. Robinson d/b/a R.A. | § | |
| Robinson, Inc.; | § | |
| WALTER T. SMITH; | § | |
| R.A. ROBINSON, INC.; and | § | |
| KGP LOGISTICS, INC. | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT
KGP LOGISTIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is a Motion for Summary Judgment [123] filed by Defendant KGP Logistics, Inc. (KGP). Plaintiff has filed a Response [126], and KGP a Reply [131]. After consideration of the parties' submissions, the record, the relevant legal authorities, and for the reasons discussed below, the Court finds that the Motion should be granted.

I. BACKGROUND

This case arises from a collision between two motor vehicles, one driven by Plaintiff Melissa Woodring and the other driven by Defendant Walter Smith, which occurred on January 11, 2011, in Gulfport, Mississippi. Pl.'s Sec. Am. Compl. [114] at p. 3; KGP's Answer [116] at p. 2. At the time of the accident, Smith was employed by Defendants Ira and Rebecca Robinson d/b/a R.A. Robinson. Answer of Ira and

Rebecca Robinson and R.A. Robinson [118] at p. 4; Answer of Walter Smith [117] at p. 3. It is undisputed that Smith was operating the vehicle in the course and scope of his employment when the accident occurred.

Defendant KGP performs installation and engineering services for AT&T Services, Inc. (AT&T). KGP's Mot. for Summ. J. [123] at pp. 2-3; Pl.'s Resp. [126] at p. 1. KGP hired R.A. Robinson as a subcontractor to build sites for AT&T's U-verse cabinets, and to partially install the cabinets. KGP's Mot. for Summ. J. [123] at pp. 3-4; Dep. of Ron Standifer [123-6] at p. 4, Ex. F. to KGP's Mot. for Summ. J. [123]; Dep. of Ira Robinson [123-10] at p. 7, Ex. J to KGP's Mot. for Summ. J. [123]. The vehicle collision in question occurred while Smith was traveling to an AT&T job site on behalf of R.A. Robinson. KGP's Mot. for Summ. J. [123] at p. 3; Pl.'s Resp. [126] at p. 3.

KGP's contract with AT&T required KGP to ensure that its subcontractors maintained business automobile liability insurance with a limit of at least $1,000,000.00 per accident. KGP-AT&T Agreement [123-4] at pp. 17-20, Ex. D. to KGP's Mot. for Summ. J. [123]. The subcontract between KGP and R.A. Robinson likewise required R.A. Robinson to maintain business automobile liability insurance with a limit of at least $1,000.000.00 per accident. KGP-R.A. Robinson Agreement [123-3] at p. 17, Ex. C to KGP's Mot. for Summ. J. [123].

The automobile driven by Smith at the time of the accident was covered by an automobile insurance policy with liability limits of only $50,000.00 per person and $100,000.00 per occurrence. Policy [123-12], Ex. L to KGP's Mot. for Summ. J. [123]. Plaintiff alleges that she cannot be adequately compensated by this policy because

she has incurred over $800,000.00 in medical costs and suffered millions of dollars in damages. Pl.'s Resp. [126] at pp. 10-11. She seeks damages from KGP as a third-party beneficiary to its contracts with R.A. Robinson and AT&T, alleging that she was damaged by KGP's failure to ensure that R.A. Robinson maintained $1,000,000.00 automobile policy limits as required by those contracts. Pl.'s Sec. Am. Compl. [114] at pp. 5-6. She also claims that KGP is vicariously liable for the acts of Smith and Robinson pursuant to the doctrine of *respondeat superior*. *Id.* at p. 3.

## II. DISCUSSION

A. The Court's Subject Matter Jurisdiction

The Court has jurisdiction over this civil action because "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332. Plaintiff is a citizen of Mississippi. Pl.'s Sec. Am. Compl. [114] at p. 1. Smith is a citizen of Georgia. Answer of Walter Smith [117] at p. 2. R.A. Robinson is an unincorporated proprietorship, and its members, Ira and Rebecca Robinson, were citizens of Georgia at the time this action was filed. Answer of Rebecca Robinson [52] at pp. 1-2; Answer of Ira Robinson [53] at pp. 1-2; *see Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008). KGP is a corporation organized under the laws of Minnesota, with its principal place of business in Minnesota. Answer of KGP [116] at p. 2. Plaintiff alleges damages in excess of $75,000.00, exclusive of interests and costs. Pl.'s Sec. Am. Compl. [114] at 1; Pl.'s Resp. [126] at pp. 10-11. Thus, the requirements of diversity jurisdiction are satisfied.

Where federal jurisdiction is based on diversity, the court applies state substantive law. *Krieser v. Hobbs,* 166 F.3d 736, 739 (5th Cir. 1999); *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78-79 (1938). The parties agree that Mississippi substantive law governs this diversity case.

B.     KGP's Motion for Summary Judgment

    1.     Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of America,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[M]ere conclusory allegations are not competent summary judgment evidence, and

such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

2. Plaintiff's Third-Party Beneficiary Claim

Plaintiff contends that KGP was contractually obligated to enforce the provisions in its contracts with AT&T and R.A. Robinson that its subcontractors maintain automobile insurance with at least a $1,000,000.00 limit per accident. Pl.'s Sec. Am. Compl. [114] at p. 5. She alleges that she was damaged as a result of KGP's purported breach of those contracts, and seeks recovery as a third-party beneficiary. *Id.* at pp. 5-6.

Under Mississippi law, "[t]hird-party-beneficiary status arises from the terms of the contract." *Simmons Housing, Inc. v. Shelton ex rel. Shelton,* 36 So. 3d 1283, 1286 (Miss. 2010). One who is not a party to a contract "cannot maintain an action upon [the] contract merely because he would receive a benefit from its performance or

because he is injured by a breach thereof." *Hartford Acc. Indem. Co. v. Hewes,* 199 So. 93, 95 (Miss. 1940); *see U.S. for Use of Control Systems, Inc. v. Arundel Corp.,* 896 F.2d 143, 146 (5th Cir. 1990)(interpreting Mississippi law). He may only recover as a third-party beneficiary when the provision which is alleged to have been breached was placed in the contract "directly or primarily for his benefit." *Hewes,* 199 So. at 95. A non-party to the contract who is "only indirectly and incidentally benefitted by its performance cannot recover for a breach thereof." *Id.*

In *Yazoo & M.V.R. Co. v. Sideboard,* the Mississippi Supreme Court held that a third party may recover directly on a contract to which he is not a party

> (1) when the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

133 So. 669, 671 (Miss. 1931).

In *Mississippi High School Activities Ass'n v. Farris,* a high school baseball team was placed on probation by the Mississippi High School Activities Association (MHSAA), and prevented from competing in a state tournament. 501 So. 2d 393, 394-95 (Miss. 1987). Team members sued MHSAA, alleging that they were third-party beneficiaries to a contract between MHSAA and their school, which required a hearing before levying sanctions. *Id.* at 395-96. The Mississippi Supreme Court found that the hearing provision in the contract directly benefitted the school, and while the students also received benefits, these were more incidental than direct. *Id.*

at 396.

In *Chic Creations of Bonita Lakes Mall v. Doleac Elec. Co.*, subcontractors and materialmen alleged that they were third-party beneficiaries to a lease agreement between a mall developer and store tenant, which required the tenant to provide a performance bond for store construction. 791 So. 2d 254, 258-59 (Miss. Ct. App. 2000). The tenant did not secure a performance bond, and the subcontractors and materialmen were not paid for their work. *Id.* at 259. They alleged that the lease's requirement of a performance bond was for the purpose of ensuring that they were paid. *Id.* The Mississippi Court of Appeals disagreed, finding that the primary purpose of the provision was to avoid the filing of liens against the mall. *Id.* The court concluded that the subcontractors and materialmen were mere incidental beneficiaries. *Id.*

Having reviewed the contract provisions at issue, it is the opinion of the Court that the insurance requirement in KGP's contracts with AT&T and R.A. Robinson were not entered into for the primary and direct benefit of Plaintiff. The provisions were primarily intended to insulate AT&T and KGP from the acts of their subcontractors. Plaintiff has pointed to no language in the contracts which persuasively supports the conclusion that AT&T and KGP intended to assume obligations to a class of persons encompassing her by incorporating the minimum insurance requirements. To the contrary, KGP's contract with R.A. Robinson requires that KGP be named as an additional insured on R.A. Robinson's business automobile liability policies. KGP-R.A. Robinson Agreement [123-3] at p. 17. This supports

KGP's argument that the minimum insurance provisions were intended for its own benefit. This contention is further supported by the contract's requirement that R.A. Robinson indemnify KGP from third-party claims resulting from the acts or omissions of R.A. Robinson. *Id.* at pp. 15-17.

In support of her position, Plaintiff has cited one Texas case addressing facts similar to those here. In *James Stewart & Co. v. Law,* 233 S.W.2d 558 (Tex. 1950), a Texas court held that a third party injured by the negligence of a subcontractor who carried no automobile insurance could recover from the general contractor for breach of a construction contract which mandated that the general contractor require its subcontractor to maintain automobile insurance. *Id.* at 561-62. The reasoning in *James*, however, is inconsistent with Mississippi law, which requires third-party beneficiary status to spring from the terms of the contract. In *James,* there was no language in the contract indicating an intent by the contracting parties to benefit third parties; however, the court presumed intent. *Id.* at 399, 401 ("[The contracting parties] must be presumed to have intended that the consequence flow from the performance of their contract.").

Other courts, on similar facts and following law akin to that in Mississippi, have rejected *James. See Hesse v. Long and Foster Real Estate, Inc.,* No. 1:11cv506, 2012 WL 1427793 (E.D. Va. 2012)(plaintiff injured in auto accident not third-party beneficiary of subcontract requiring driver to maintain minimum liability insurance); *Barney v. Unity Paving, Inc.,* 639 N.E.2d 592 (Ill. App. 1994)(bus passenger not third-party beneficiary of contract between city and contractors which obligated contractors

-8-

to require subcontractors to have automobile insurance)("Simply because the parties may have known, expected or even intended that third parties might benefit from their agreement does not mean that the contract was intended for the *direct* benefit of others.").

While Plaintiff may have benefitted had Smith's vehicle been insured as required by KGP's contracts, the benefit to her would be incidental to the primary and direct intended benefit to AT&T and KGP of protecting themselves from claims against their subcontractors. Under Mississippi law, Plaintiff cannot maintain an action against KGP as a third-party beneficiary to its contracts with AT&T and R.A. Robinson.

      3.      Plaintiff's *Respondeat Superior* Claim

Plaintiff also contends that KGP exercised control over the work performed by Smith and R.A. Robinson, "such that an employer-employee relationship exists" between them. Pl.'s Sec. Am. Compl. [114] at pp. 3-4. She seeks recovery from KGP under a theory of *respondeat superior. Id.* KGP contends that R.A. Robinson was an independent contractor, such that it is not liable for the actions of Smith and R.A. Robinson. KGP's Mot. for Summ. J. [123] at p. 6.

"Generally, an employer is liable for negligent acts of its employee done in the course and scope of his employment under the doctrine of *respondeat superior,* but an employer is not liable for the negligence of an independent contractor." *McKee v. Brimmer,* 39 F.3d 94, 96 (5th Cir. 1994)(interpreting Mississippi law). To determine whether one is an employee or an independent contractor, Mississippi law employs a

non-exhaustive list of factors. *Id.* at 97; *Brinkley v. United States,* 2:05-CV-371-KS-JMR, 2006 WL 1666270, *2 (S.D. Miss. 2006). The overarching inquiry in the factoring analysis is whether the employer exhibited the requisite amount of control over the engaged party to categorize the party as an employee. *McKee,* 39 F.3d at 96. If the employer is "concerned only with the ultimate results and not the details of the work," this "point[s] to non-liability." *Fruchter v. Lynch Oil Co.,* 522 So. 2d 195, 199 (Miss. 1988). The balancing factors for determining an engaged party's status derive from *Kisner v. Jackson,* 132 So. 90 (1931), and are as follows:

> [1] [w]hether the principal master has the power to terminate the contract at will; [2] whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; [3] whether he furnishes the means and appliances for the work; [4] whether he has control of the premises; [5] whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; [6] whether he has the right to prescribe and furnish the details of the kind and character of work to be done; [7] whether he has the right to supervise and inspect the work during the course of employment; [8] whether he has the right to direct the details of the manner in which the work is to be done; [9] whether he has the right to employ and discharge the subemployees and to fix their compensation; and [10] whether he is obliged to pay the wages of said employees.

*Richardson v. APAC-Mississippi, Inc.,* 631 So.2d 143, 148 (Miss. 1994)(citing *Kisner,* 132 So. at 91). "When the facts are undisputed, determining the type of relationship is a legal question." *McKee,* 39 F.3d at 96 (citing *Richardson,* 631 So.2d at 152).

Before evaluating the *Kisner* factors in this case, the Court notes that the contract between KGP and R.A. Robinson clearly identifies R.A. Robinson as an

independent contractor:

> Subcontractor will supervise and direct completion of the Services using Subcontractor's best skill and attention. Subcontractor will be solely responsible for, and will have control over, construction, means, methods, techniques, sequences and procedures and for coordinating all portions of the Services under the SOW [Scope of Work], unless the SOW specifies otherwise.

KGP-R.A. Robinson Agreement [123-3] at p. 4. The Court, however, is not confined to the terms of the contract in determining whether R.A. Robinson was an employee or an independent contractor. *McKee,* 39 F.3d at 98 ("[A]n employer will not be allowed to escape liability by drafting a contract which labels its employee an independent contractor . . . ."). The Court must consider "the actual conduct of the parties in reaching a conclusion as to the relationship of the parties." *Brinkley,* 2006 WL 1666270 at *3.

Plaintiff concedes that *Kisner* factors three and ten weigh in favor of KGP. Pl.'s Resp. [126] at pp. 6-8. R.A. Robinson furnished the means and appliances for work, and KGP did not pay the wages of R.A. Robinson's employees. *Id.* KGP concedes that factor one weighs in favor of Plaintiff. KGP's Memo in Supp. of Summ. J. [124] at p. 12. KGP had the power to terminate its agreement with R.A. Robinson. *Id.* The Court will focus its inquiry on the remaining *Kisner* factors.

    i.    <u>Factor Two: Whether KGP had the Power to Fix the Price in Payment for the Work, or Vitally Controlled the Manner and Time of Payment</u>

R.A. Robinson submitted a bid for the job, and KGP could accept or deny the bid. Bid and Acceptance of Bid Documents [123-13][123-14], Exs. M and N to KGP's Mot. for Summ. J. [123]; Dep. of Ira Robinson [125-3] at p. 44, Ex. C to Pl.'s Resp.

[125]. R.A. Robinson determined what it would bid, and therefore it controlled the price that would be paid. This factor weighs in favor of R.A. Robinson being an independent contractor. *See Stewart v. Lofton Timber Co., LLC,* 943 So. 2d 729, 733 (Miss. Ct. App. 2006).

      ii.     <u>Factor Four: Whether KGP had Control Over the Premises</u>

Though KGP assigned R.A. Robinson to certain job sites, the job sites were not controlled by KGP because they were owned by AT&T. Pl.'s Resp. [126] at p. 6. This factor weighs in favor of R.A. Robinson being an independent contractor. *See Parmenter v. J&B Enterprises, Inc.,* No. 2010-CA-01251-COA, 2012 WL 539949, *5 (Miss. Ct. App. 2012); *Walker v. McClendon Carpet Servs., Inc.,* 952 So. 2d 1008, 1010 (Miss. Ct. App. 2006).

      iii.    <u>Factor Five: Whether KGP Furnished the Materials Upon Which the Work Was Done and Dealt with No Other with Respect to the Output</u>

KGP provided materials to R.A. Robinson such as piping, pre-set concrete slabs, and U-verse cabinets. Dep. of Joshua Jones [123-8] at pp. 22, 25, Ex. H to KGP's Mot. for Summ. J. [123]; Dep. of Kenneth Jones [123-9] at p. 19, Ex. I to KGP's Mot. for Summ. J. [123]; Dep. of Walter Smith [125-7] at pp. 22, 25, Ex. G to Pl.'s Resp. [125]. R.A. Robinson provided some of its own materials. Dep. of Walter Smith [125-5] at p. 7, Ex. E to Pl.'s Resp. [125]. AT&T installed further components, such as fiber optic cables to the U-verse cabinets, after R.A. Robinson completed its work. Dep. of Ira Robinson [123-10] at pp. 7-8, 48; Dep. of Walter Smith [125-5] at p. 19. Therefore, KGP did not receive a finished product from R.A. Robinson. The fact that KGP provided some materials to R.A. Robinson demonstrates some control by KGP

over R.A. Robinson. The fact that KGP did not receive a finished product from R.A. Robinson weighs in favor of R.A. Robinson being an independent contractor.

    iv.    <u>Factor Six: Whether KGP had the Right to Prescribe and Furnish the Details of the Kind and Character of Work to be Done</u>

AT&T provided the specifications for the job to KGP. Dep. of Ron Standifer [123-6] at p. 5. KGP then supplied R.A. Robinson with blueprints and a job information packet containing specific details about installation and, on occasion, a photo and map to the job site. *Id.* at pp. 12-13; Dep. of Joshua Jones [123-8] at pp. 13, 16, 23; Dep. of Ira Robinson [125-3] at p. 44. The documents provided to R.A. Robinson showed where pipes, slabs, fiber optic cables, and U-Verse cabinets were to be placed, and specified the depth of installation. Dep. of Ron Standifer [123-6] at pp. 12-13; Dep. of Joshua Jones [123-8] at pp. 8, 23-24. KGP imposed a start and completion date for R.A. Robinson's work. Dep. of Ron Standifer [123-6] at p. 13; Dep. of Joshua Jones [123-8] at pp. 23-24. This factor weighs in favor of R.A. Robinson being an employee.

    v.    <u>Factor 7: Whether KGP had the Right to Supervise and Inspect the Work During the Course of Employment</u>

KGP inspected R.A. Robinson's work after it was completed to verify that the job was performed according to specifications. Dep. of Ron Standifer [123-6] at pp. 5-6; Dep. of Joshua Jones [123-8] at pp. 8-9; Dep. of Ira Robinson [123-10] at pp. 8, 47. AT&T and KGP then jointly inspected R.A. Robinson's work. Pl.'s Resp. [126] at p. 7; Dep. of Ron Standifer [123-6] at pp. 6, 11. KGP did not supervise R.A. Robinson's work during the job. Dep. of Joshua Jones [123-8] at pp. 8-9, 21-22; Dep. of Kenneth Jones [123-9] at pp. 20-21. R.A. Robinson's own supervisors oversaw their employees

during the work. Dep. of Kenneth Jones [123-9] at pp. 8-9, 20-21; Dep. of Ira Robinson [123-10] at p. 8; Dep. of Walter Smith [125-5] at p. 7; Dep. of Joshua Jones [123-8] at pp. 8, 23. R.A. Robinson employees did not report to KGP supervisors. Dep. of Joshua Jones [123-8] at pp. 21-23; Dep. of Kenneth Jones [123-9] at p. 21; Dep. of Walter Smith [125-5] at p. 8. This factor weighs in favor of R.A. Robinson being an independent contractor.

    vi.    Factor 8: Whether KGP Had the Right to Direct the Details of the Manner in Which the Work Was to be Done

KGP did not dictate the construction methods used by R.A. Robinson to perform their assigned tasks. Dep. of Ron Standifer [123-6] at p. 13; Dep. of Joshua Jones [123-8] at pp. 23-24. Nor did KGP prescribe the type of tools or vehicles R.A. Robinson utilized on the job. Dep. of Ron Standifer [123-6] at pp. 13-14. It did not dictate how many employees R.A. Robinson used on the job, or control the hours that R.A. Robinson worked at the job sites. Dep. of Ron Standifer [123-6] at pp. 13-14; Dep. of Joshua Jones [123-8] at p. 23. KGP did not train R.A. Robinson's employees. Dep. of Joshua Jones [123-8] at p. 24; Dep. of Kenneth Jones [123-9] at p. 21. R.A. Robinson was responsible for maintenance and upkeep of its own equipment, and paid its own operating expenses. Dep. of Ira Robinson [123-10] at p. 19; Dep. of Ira Robinson [125-3] at p. 43; Dep. of Walter Smith [125-5] at p. 7.

R.A. Robinson managed its day-to-day operations and performed the work specified with minimal oversight. Dep. of Walter Smith [123-7] at p. 22; Dep. of Ron Standifer [123-6] at p. 5. R.A. Robinson employees were given KGP's phone number and could call KGP if they had questions about their instructions, proposed a change

to the blueprints, or needed directions to the job site. Dep. of Ron Standifer [123-6] at pp. 10-11; Dep. of Walter Smith [123-7] at p. 22; Dep. of Joshua Jones [123-8] at p. 13. Occasionally, KGP would visit the job site to see how work was progressing. Dep. of Walter Smith [123-7] at p. 22. Smith testified that he contacted KGP supervisors approximately three or four times a month regarding problems he encountered with the specifications in the blueprints and his proposed changes. *Id.*

This factor weighs in favor of R.A. Robinson being an independent contractor. While KGP imposed specific requirements for the job on R.A. Robinson, R.A. Robinson managed its own day-to-day operations in performing the work. *See Parmenter,* 2012 WL 539949 at *5; *Allen v. Choice Hotels Intern.,* 942 So. 2d 817, 821 (Miss. Ct. App. 2006)(hotel not employee of franchisor despite franchisor imposing many specific requirements upon hotel); *McCrary v. Wade,* 861 So. 2d 358, 361 (Miss. Ct. App. 2003).

  vii. <u>Factor 9: Whether KGP Had the Right to Employ and Discharge the Subemployees and to Fix Their Compensation</u>

Under the terms of their agreement, KGP could require R.A. Robinson to remove its employees from the job site. KGP-R.A. Robinson Agreement [123-3] at p. 11. Generally, however, R.A. Robinson hired and fired its own employees. Pl.'s Resp. [126] at p. 7; Dep. of Ron Standifer [123-6] at p. 14; Dep. of Joshua Jones [123-8] at p. 21. It also determined its employees' compensation. Pl.'s Resp. [126] at p. 7. This factor weighs in favor of R.A. Robinson being an independent contractor. *See Parmenter,* 2012 WL 539949 at *5; *Stewart,* 943 So. 2d at 734; *Allen,* 942 So. 2d at 821.

viii. <u>Summary</u>

Applying the *Kisner* factors to the undisputed facts, the Court finds that R.A. Robinson was an independent contractor, and not an employee, of KGP. KGP cannot be held liable for the actions of Smith and R.A. Robinson under the doctrine of *respondeat superior*. KGP is entitled to summary judgment on Plaintiff's claims against it.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff cannot carry her summary judgment burden. KGP's Motion for Summary Judgment [123] should be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion for Summary Judgment [123] of Defendant KGP Logistics, Inc., is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff's claims against KGP Logistics, Inc., are dismissed with prejudice.

**SO ORDERED AND ADJUDGED**, this the 4th day of September, 2012.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE